UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNIVERSITY NEUROSURGICAL | ) | |
| ASSOCIATES, P.C., D/B/A PREMIER | ) | |
| IMAGING, D/B/A UNIVERSITY NEUROLOGICAL | ) | Civil Action No. |
| SURGEONS, D/B/A SOR II, D/B/A SPINAL AND | ) | 5:14-cv-10719 |
| ORTHOPEDIC REHABILITATION II, D/B/A | ) | Hon. Judith E. Levy |
| MICHIGAN HEAD & SPINE INSTITUTE, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**RULE 26(f)
JOINT
PROPOSED
DISCOVERY
PLAN AND CASE
SUMMARY**

---

MILLER & TISCHLER, P.C.
BY: WAYNE J. MILLER (P31112)
MILEA M. VISLOSKY (P69306)
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
28470 W. 13 Mile Rd., Ste. 300
Farmington Hills, MI 48334-5401
(248) 945-1040  /  (248) 536-5042 fax
email:  wmiller@msapc.net
mvislosky@msapc.net
rmiller@msapc.net

MILLER, CANFIELD, PADDOCK
& STONE, P.L.C.
BY:  DAVID D. O'BRIEN (P65532)
Attorney for State Farm
101 N. Main, Seventh Floor
Ann Arbor, MI  48104
(734) 668-7761  /  (734) 747-7147 fax
email:  Obrien@millercanfield.com

BY: THOMAS W. CRANMER (P25252)
MILLER, CANFIELD, PADDOCK
& STONE, P.L.C.
co-counsel for State Farm
840 W. Long Lake Rd., Ste. 200
Troy, MI 48098
(248) 267-3381  /  (248) 879-2001 fax
email:  cranmer@millercanfield.com

---

## RULE 26(f) JOINT PROPOSED DISCOVERY PLAN AND CASE SUMMARY

Pursuant to Rule 26 of the Federal Rules of Civil Procedure and this Court's Order dated July 1, 2014, plaintiff University Neurosurgical Associates, P.C. D/B/A Premier Imaging, D/B/A University Neurosurgical Surgeons, D/B/A SOR II, D/B/A Spinal and Orthopedic Rehabilitation II, D/B/A Michigan Head & Spine Institute (collectively "Plaintiff") and defendant State Farm Mutual Automobile Insurance Company ("State Farm") submit the following proposed Joint Discovery Plan and Case Summary, which the parties prepared following a telephonic conference of counsel[1] on July 8, 2014:

## CASE SUMMARY

**Plaintiff's position:**

This is a first party claim for personal injury protection benefits (PIP) pursuant to the Michigan No-Fault Act, MCL 500.3101, *et seq.* Plaintiff is a Professional Corporation operating four medical facilities in the State of Michigan that provided, and continue to provide, reasonably necessary comprehensive medical, therapeutic, diagnostic, rehabilitative services and treatment to persons who sustained injuries in motor vehicle accidents and held insurance policies or

---

[1] In addition to Messrs. David O'Brien and Thomas W. Cranmer of the Miller Canfield firm, State Farm is represented in this case by attorneys Frank Falzetta, Moe Keshavarzi and Jennifer Hoffman of Sheppard Mullin Richter & Hampton, LLP in Los Angeles, California. Mr. Keshavarzi's application for admission into this Court has been submitted and is pending. Mr. Falzetta and Ms. Hoffman are awaiting receipt of their Certificates of Good Standing and intend to submit their applications for admission immediately upon receipt.

claims for payment with Defendant.  Plaintiff made claims for payment for the costs of treatment and care related to those injuries  and submitted reasonable proof of the fact and amount of its claims to Defendant, requesting payment in full of its reasonable and customary charges, in accordance with the Michigan No-Fault Act.

In response, Defendant issued partial payments amounting to approximately 55% of the total charges billed; relying upon a "secretive" and fatally flawed database used to audit and reduce Plaintiff's charges.  By this litigation, Plaintiff specifically refutes and challenges the reliability of the underlying data, the validity of the underlying data, as well as the methodologies utilized and relied upon by Defendant to unreasonably reduce full reimbursement to Plaintiff.

**Factual issues:**  the main factual issues are:

whether Plaintiff's charges are its reasonable and customary charges pursuant to the Michigan No-Fault Act, MCL 500.3107; 500.3157;

whether full payment of Plaintiff's charges is "overdue;" and

whether No-Fault interest is owed on outstanding balances pursuant to the Michigan No-Fault Act, MCL 500.3142.

Additionally, factual issues surrounding the origin of, the validity of and reliability of the data and database(s) utilized and relied upon by Defendant.

**Legal issues:**  the main legal issues involve the reasonableness of Defendant's conduct in refusing to pay Plaintiff's full reasonable and customary charges and

3

whether No-Fault penalty attorney fees are owed to Plaintiff pursuant to the Michigan No-Fault Act, MCL 500.3148.

**Relief sought:**  Plaintiff is seeking declaratory relief and damages in excess of $2 million dollars in outstanding charges, plus all No-Fault interest and attorney fees it is entitled to under the Michigan No-Fault Act.

**State Farm's position:**

Plaintiff allegedly provided medical services to State Farm's insureds and then billed State Farm for those services.  It claims that State Farm should pay each *entire* bill without any questions asked.  Michigan's No-Fault Act, however, belies this position.

Michigan's No-Fault Act, codified in Section 500.3101 et seq. of Michigan's Insurance Code, provides a system of mandatory no-fault auto insurance that requires, among other things, Michigan drivers to purchase personal protection insurance ("PIP insurance").  Several provisions of the No-Fault Act pertain to this dispute.  Sections 500.3107 and 500.3157, respectively, describe the "reasonable" and "customary" requirements for payment of benefits.  Specifically, under Section 3107, PIP insurance benefits "are payable by a no-fault insurer for 'allowable expenses consisting of all *reasonable* charges incurred for *reasonably* necessary products, services and accommodations for an injured person's care, recovery or rehabilitation …."   MCL 500.3107(1)(a) (emphasis added).   Section 3157

4

provides: "[a] physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by [PIP] insurance … may charge a *reasonable* amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance." MCL 500.3157 (emphasis added).

Thus, the No-Fault Act entitles a provider to fees that are *both* "reasonable" and "customary". Plaintiff "bears the burden of proving both the reasonableness and customariness of its charges." *Munson v. Auto Club Insurance Association*, 554 N.W.2d 49, 54 (Mich. App. 1996).

In its First Amended Complaint Plaintiff cites to several cases which, it claims, support its position that State Farm must pay the entirety of each of its bills. (FAC, 42-44) (citing, among others, *Mercy Mt. Clemens v. ACIA*, 219 Mich. App. 46 (1996) and *Hoffman v ACIA*, 211 Mich App 55, 75 (1995)).

These cases, however, only address the question of what constitutes a "customary" charge. They do not address the "reasonableness" requirement of the No-Fault Act.

*Advocacy Organization for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365 (2003) ("AOPP"), which Plaintiff does not cite, addresses the interplay between the "customary" and "reasonable" prongs of the No-Fault Act.

It holds that "the 'customary' fee a particular provider charges under § 3157 does not define what constitutes a 'reasonable charge' under § 3107. Rather, the 'customary fee' is simply the cap on what health-care providers can charge, and is not, automatically, a 'reasonable' charge requiring full reimbursement under § 3107." *Id.*

*AOPP* also rejected the argument, also made by Plaintiff here, that an insurer must blindly pay a provider's bill without asking any questions. It held that the plain language of Section 3107 "clearly evinces the Legislature's intent to 'place a check on health care providers who have 'no incentive to keep the doctor bill at a minimum.'" *Id.* at 378. Forcing insurers to pay the entire amount of providers' bills would "require insurance companies to accept health care providers' unilateral decisions regarding what constitutes reasonable medical expenses, effectively eliminating insurance companies' cost-policing function as contemplated by the no-fault act." *Id.*

Based on the foregoing, Michigan law expressly authorizes the State Farm conduct Plaintiff challenges here -- reviewing Plaintiff's bills and paying a reduced "reasonable" amount, when Plaintiff charges a higher amount. Nothing in Michigan law prohibits State Farm's use of a database to perform this review and State Farm denies Plaintiff's contention that the databases it used were "secretive" and "flawed".

6

State Farm submits that the principal legal issue in this case is not, as Plaintiff contends, whether State Farm's conduct in paying less than Plaintiff's billed amounts was reasonable. Rather, under governing Michigan statutes, the main legal issue is whether Plaintiff can satisfy *its* burden of showing that each charge for each service rendered is not only customary but also reasonable under Sections 3107 and 3157.

State Farm also submits that the principal factual issues all revolve around the following issues: how Plaintiff established its charges for various services allegedly rendered, how those charges compare to those billed and accepted by Plaintiff from other payors and how Plaintiff's charges compare to those billed and accepted by other providers in the relevant geographic market.

The parties propose the following Discovery Plan in accordance with Fed Rule Civ Proc 26(f)(3):

A) **Initial disclosures (addressed below)**

B) **Plaintiff's proposed discovery:** Plaintiff anticipates conducting discovery in this action including the depositions of the relevant individuals, including, but not limited to, the parties and/or their representatives, individuals from Fair Health, Ingenix, and Mitchell Medical; experts in the area of No-Fault claim processing/auditing/use of the Mitchell/Decision Point software, and the respective

Ingenix and Fair Health databases.    Additionally, discovery will be conducted regarding the relationships and contractual agreements between Defendant State Farm and Mitchell Medical, including any relationships/contractual agreements between Defendant State Farm and Ingenix, as well as between Defendant State Farm and Fair Health. Discovery will also be conducted regarding any and all databases and information utilized and relied upon by Defendant to reduce and underpay Plaintiff's charges.

Plaintiffs further anticipate disclosing all documents relevant to the parties' claims and defenses, and anticipate the use of Interrogatories, Depositions on Written Questions, Requests for Production of Documents and Requests for Admission as necessary.

**<u>State Farm's proposed discovery:</u>**

State Farm anticipates serving Interrogatories, Requests for Production of Documents and Requests for Admissions as well as Notices of Depositions. Through these discovery tools, State Farm will seek information regarding all issues relevant under the Michigan No-Fault Act, including, without limitation, the following:  all facts supporting or relating to Plaintiff's allegations; how Plaintiff established amounts it charged State Farm; the amounts Plaintiff bills and accepts from other payors; and the amounts other providers in the relevant geographic area bill and accept for the same or similar services.

**C) ESI:**      The parties agree to the entry of the Model Order Relating to the Discovery of Electronically Stored Information adopted by the United States District Court for the Eastern District of Michigan adopted September 20, 2013[2]

**D)      Privilege/Protection:**

**Plaintiff:**   Absent receipt of any discovery requests, Plaintiff cannot ascertain whether any privilege will be invoked or protection sought.

**State Farm:**   Based on Plaintiff's intentions regarding discovery, State Farm anticipates that it may need a protective order in place to protect confidential information.   If a need arises, State Farm will work with Plaintiff's counsel to reach an agreement on this issue and submit a stipulation to the Court.   To prevent any delay, State Farm requested that Plaintiff stipulate to a protective order now. Plaintiff has refused and responded that if State Farm believes a protective order is necessary then it should file a motion asking for one.   State Farm intends to do so if Plaintiff's discovery requests call for disclosure of confidential information.

**E)      Limitations:**

**Plaintiff:**      Given the volume of records to be exchanged, the areas of discovery to be reviewed, the depositions which will be necessary, and the experts which will need to be retained and deposed, Plaintiff believes discovery requests beyond the limitations of Rule 33(a)(1) will be necessary given the significance of the No-

---

[2] http://www.mied.uscourts.gov/News/Docs/EsiOrderChecklist.pdf

Fault benefits at issue, the volume of the information and number of different entities that may have relevant information regarding the instant dispute. Plaintiff is proposing that at least 40 interrogatories, including all discrete subparts, will be necessary.

Further, while the parties anticipate many issues may be resolved through the use of Request for Admissions, there is a possibility that Plaintiffs will need more than ten (10) depositions.

**State Farm:**  While State Farm believes that 25 Interrogatories are sufficient, it does not oppose Plaintiff's request for 40 per side.

**F) Orders under 26(c):**

**Plaintiffs:** None.

**State Farm's position**:  As described above, State Farm will request a protective order before producing confidential information.

**G) Settlement Discussions:**

The parties' dispute goes back several years and they have unsuccessfully attempted to resolve the matter informally several times.  They believe that a private mediation may be appropriate after completion of discovery.

**Orders under 16(b):**  The parties propose the following deadlines:

1.      **Initial Disclosures** pursuant to FRCP 26(a)(1) shall be exchanged between the parties by  August 4, 2014.

10

2.      **Expert Disclosures** pursuant to per FRCP 26(a)(2) shall be exchanged between the parties thirty (30) days after close of fact discovery, Rebuttal Expert disclosures shall be exchanged **fifteen (15) days** after the Initial Expert Disclosures and expert discovery cut-off shall be **thirty (30) days** after exchange of Rebuttal Expert Disclosures.

3.      **Pretrial Disclosures** pursuant to FRCP 26(a)(3) will be as follows:

**Plaintiff's Position**:  Plaintiff proposes preliminary FRCP 26(a)(3)(A)(pretrial disclosures to be exchanged on or before September 30, 2014 with trial witness and trial exhibit lists to be filed thirty (30) days prior to trial, with objections to be filed fourteen (14) days before trial.

**State Farm's Position**:      Rule 26(a)(3)(A) provides that the parties shall exchange Pre-trial disclosures (witness and exhibit lists) thirty (30) days before trial and the parties have agreed to do just that (See below).  The parties have also agreed to exchange Initial Disclosures on August 4, 2014, in which they will identify, among other things, witnesses and documents.   In addition to these disclosures, Plaintiff is asking the Court to order the parties to exchange a "preliminary" draft of the pre-trial witness and exhibit lists, in September 2014, many months before trial and one month after the parties exchange Initial Disclosures.  Neither the Local Rules nor the Federal Rules of Civil Procedure require an exchange of "preliminary" drafts of the pre-trial exhibit and witness

11

lists.   To the extent the parties need to know the identities of witnesses and documents, they will learn this information through the Initial Disclosures.

State Farm respectfully submits that Plaintiff's proposed exchange of "preliminary" draft of pre-trial witness and exhibits lists is redundant and unnecessary.

     a.   **Witness Lists** will be filed **thirty (30) days** prior to trial, with objections to be filed **fourteen (14) days** before trial; the disclosures will include the name, address and telephone number of each witness, identifying those the party expects to call and those the party may call;

     b.   **Exhibit Lists** will be exchanged **thirty (30 days** before trial, with objections to be filed **fourteen (14) days** before trial; the disclosures will provide the identification of each document and/or other exhibits;

**(Resume Joint Plan)**

**Depositions** to be utilized at trial will be filed **thirty (30) days** before trial, with objections to be filed **fourteen (14) days** before trial;

4.   **Discovery** shall be completed by **February 13, 2015**.

5.   **Motions:** dispositive motions shall be filed within **thirty (30) days** after expert discovery cut-off;

6.    **Trial** shall be scheduled **sixty (60) days** after hearing on dispositive motion. Counsel for State Farm are unavailable for trial on the following dates:  (March 21-April 11).

Respectfully submitted:


/s/  Milea M. Vislosky                    /s/ David D. O'Brien
MILEA M. VISLOSKY (P69306)          DAVID D. O'BRIEN (P65532)
Attorney for Plaintiffs                   Attorney for State Farm

13